IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CIVIL ACTION NO.   5:12-cv-04075

GERARD O'SHEA, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On the 2nd day of February, 2015, a bench trial was held in the above-styled matter. Having heard the evidence and having reviewed the exhibits presented at trial, as well as the parties' submissions,[1] the Court finds the relief requested by the Government to be appropriate under the law.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This case involves unpaid tax assessments against Gerard O'Shea, Kathnell O'Shea, and the All About Beauty Trust for tax years 2002, 2003, and 2004. On August 6, 2012, the United States brought suit to reduce those assessments to judgment and to foreclose federal tax liens against four parcels of real property, all in Greenbrier County, West Virginia. The O'Sheas conveyed two parcels to the Genesis Trust in 1997. A third parcel was purchased by Gerard,

---

1 During the trial, the *pro-se* Defendants requested permission to file Proposed Findings of Fact and Conclusions of Law post-trial. The Court set a deadline of one week, and the Defendants filed the document, both by mail and by hand-delivery, on February 9, 2015. (Documents 114 & 115.)

Kathnell, and Kim O'Shea[2] as Trustees of the Gand K Trust in 1999. The fourth parcel was purchased by Gerard and Kathnell O'Shea as Trustees for the Genesis Trust in 2002. The United States asserts that the Gand K and Genesis Trusts are sham trusts that hold the subject properties only as nominees and/or alter egos of the taxpayer Defendants.

The Defendants, proceeding *pro se*, filed a *Motion to Dismiss, or Alternatively for Judgment on the Pleadings* (Document 39) on May 29, 2013, asserting that the United States had failed to meet certain technical requirements for bringing suit, purportedly depriving the Court of jurisdiction. The Court denied their motion on October 3, 2013. (Document 56.) The Court permitted the United States to file its *First Amended Complaint for Federal Taxes* (Document 60) on November 13, 2013. On December 23, 2013, the Defendants moved to dismiss the amended complaint, contending that it contained allegations of fraud and did not comply with Federal Rule of Civil Procedure 9(b). (Document 61.) The Court denied the motion on February 12, 2014, based on the United States' assurances that it was not alleging that the O'Sheas committed fraud. (Document 65.) Defendant Kathnell O'Shea filed a *Motion for Summary Judgment* (Document 66) on April 30, 2014, contending that the United States had failed to mail her the statutorily required Notices of Deficiency. The United States required several extensions to gather the necessary documents, (*see* Documents 70, 72, & 74), but ultimately produced evidence that the notices had been properly mailed. (Document 76.) The Court denied Kathnell O'Shea's motion for summary judgment on August 28, 2014. (Document 87.)

The Defendants filed pretrial motions seeking dismissal due to the United States' alleged failure to make pretrial disclosures. The Court denied the motions, finding that both parties had

---

2 Kim O'Shea is the adult daughter of Gerard and Kathnell O'Shea. She is a defendant only in her capacity as Trustee of the Gand K Trust and as a person who may claim an interest in some of the properties at issue.

failed to meet discovery obligations and that exclusion of evidence and/or dismissal were more severe sanctions than the facts warranted.  During trial, the Defendants contested the authenticity of many of the exhibits presented by the United States.  The Court overruled the objections, and noted that all of the documents presented were official records.  Further, the case law supports the finding that the forms suffice to establish the Government's case absent contradictory evidence.

## II.    FINDINGS OF FACT

The Government's primary witness, Internal Revenue Service (IRS) officer Gregory Yurick, testified that Gerard O'Shea and Kathnell O'Shea had failed to file income tax returns for 2002, 2003 and 2004, and that the All About Beauty Trust had filed returns reflecting a balance of $0.  The Government introduced the tax assessments, as memorialized in Form 4340, against each Defendant taxpayer for the years of 2002, 2003, and 2004, as well as the current amounts due, including applicable taxes, penalties, fees, and interest.

For Gerard O'Shea, the IRS assessed taxes owed of $38,840.00 for 2002 (Ex. 1), $74,441.00 for 2003 (Ex. 2), and $66,471.00 for 2004 (Ex. 3).  For each year, Mr. Yurick testified, a "ninety day letter" was sent to notify the taxpayers of the deficiency after the IRS filed a "substitute for return" identifying the taxes due.  This letter gives the taxpayer an opportunity to challenge the proposed IRS assessment within ninety days.  Absent a response from the taxpayer, the assessment becomes final.  Defendant Gerard O'Shea did not respond to any of the ninety-day letters.

For Kathnell O'Shea, the IRS assessed taxes owed of $38,840.00 for 2002 (Ex. 4), $73,275.00 for 2003 (Ex. 5), and $62,066.00 for 2004 (Ex. 6).  She also failed to respond to the ninety-day letters.  For the All About Beauty Trust, the IRS assessed taxes owed of $44,522.00

3

for 2002 (Ex. 7), $36,172.00 for 2003 (Ex. 8), and of $28,006.00 for 2004 (Ex. 9).  There was no response to the ninety-day letters.

Each taxpayer failed to respond to the notices of deficiency, which were sent to the correct mailing address, or to make any appeal of the assessments in tax court.  The assessments, therefore, became final.  No payments were made after the assessments.  Additional fees, penalties, and interest accumulated over the years.  The only payments were in the form of a continuous levy against Defendant Gerard O'Shea's social security income, which satisfied the full balance due for his 2002 liability, leaving a credit of $1,317.  The payoff calculation for Defendant Gerard O'Shea, as of the trial date of February 2, 2015, was $159,040.11 for 2003 and $154,910.60 for 2004, for a total of $312,633.71.  (*See* Ex. 13.)  The payoff calculation for Defendant Kathnell O'Shea was $98,656.14 for 2002, $178,226.41 for 2003, and $144,657.08 for 2004, for a total of $421.539.63.  (*Id.*)  The payoff calculation for the All About Beauty Trust was $94,470.58 for 2002, $89,853.89 for 2003, and $62,220.25 for 2004, for a total balance of $246,544.72.  (*Id.*)

The Government seeks to enforce federal tax liens against four parcels of property.  Parcel One, located at 191 Hartsook Road, Clintonville, West Virginia, is numbered 18 51003800000000.[3]  Parcel Two is adjacent to Parcel One, and is numbered 18 51003900000000.[4]

---

3 Parcel One is described in the deed as follows:
    All of that certain tract or parcel of real estate, lying and being on Sinking Creek, Williamsburg District, Greenbrier County, West Virginia, and bounded and described as follows:
    "Joining the lands of J. R. Hannah and S. W. Gilkerson and others, beginning at a white oak corner to Hannah and with same S 81-1/4 E 23-3/4 poles to hickory and white oak N 23 W 64 poles to a white oak and ash sapling N 66 W 23-3/4 poles to corner to Gilkerson and with same S 23 E 68 poles to the BEGINNING, continuing 10 acres, more or less."
    THERE IS EXCEPTED from the above described property and not herein conveyed all of that tract or parcel of land conveyed from Ruby J. Whanger, et vir, to L. L. Bryant, et ux, by deed dated July 22, 1974, of record in the Office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Deed Book 288 at Page 442; to which deed reference is here made for all pertinent

Parcel Three is located at 129 W. Washington St., Lewisburg, West Virginia, and is numbered 10 19014600000000.[5] Parcel Four is located at 271 Milligan Greek Lane/Bungers Mill Rd., Lewisburg, West Virginia, and is numbered 09 11000700000000.[6] Parcel One is the primary residence of the O'Sheas. Parcel Two is land adjacent to the residential property. Parcel Three is a business property, containing a beauty salon operated by the O'Sheas and rental apartments. Parcel Four is farmland.

Parcel One is currently deeded to Kathnell and Gerard O'Shea as Trustees of the Genesis Trust. (Ex. 27.)[7] Parcel Three is deeded to Gerard, Kathnell, and Kim O'Shea as Trustees of the

---

purposes.

4 Parcel Two is described in the deed as follows:
"BEGINNING at a white oak and ash sapling corner, common corner with Ruby J. Whanger; thence S 23 E 863 feet to stake at road, common corner of real estate conveyed to L.L Bryant by parties of the second part and of Robert L. Defibaugh, Jr. and wife; thence with meanders of the road in a northeasterly direction to a locust stump in side of road, common corner of L. L. Bryant and Jonathan Whanger; thence northwesterly approximately 540 feet to the point of BEGINNING, and containing approximately four (4) acres, more or less."

5 Parcel Three is described in the deed as follows:
"All of that certain lot or parcel of land with the buildings and improvements thereon, situate, lying and being in the Town of Lewisburg, Greenbrier County, West Virginia, fronting thirty- seven (37) feet and six (6) inches, more or less, on the South side of Main Street at the corner of Market or Court Street in said Town and running back between parallel lines ninety (90) feet, being what is known as the Lewisburg Drug Store Property."

6 Parcel Four is described in the deed as follows:
"A lot of 2 acres lying along the road to Livesay's Mill and adjoining Lot No. I and bounded as follows: Beginning at a willow on the bank of the Creek and corner to Lots No. 1 and 2 and with the latter N 57 W 7 poles to a stake by a rock and near the end of bridge, it being an original corner of 204 acre tract and also corner to Lot No. 3, thence with the road and original line N 21 1/4 E passing Mary A. Bright's residence at 8 poles and 1 1/5 poles to left of same in all 27 poles to a walnut to which hangs a gate, thence N 10 ½ E 10 2/5 poles to a stake by plank fence & road and corner to Lot No. 1, thence leaving the original line and with the line of Lot No. 1, S 61 1/4 E 11 1/5 poles to a stake on a narrow ridge between two low places and corner to the same and with S 27 W passing orchard fence at 5 poles thence through the same passing garden fence at 19 poles and through the said garden and passing garden and yard fence at 24 poles thence through the yard and crossing the creek and in all 36 2/5 poles to the beginning."

7 Gerard and Kathnell O'Shea purchased Parcel Two on June 4, 1980. (Ex. 26.) The Government indicated that the Genesis Trust may claim an interest in Parcel Two. The Court observes that the deed conveying Parcel One to the Genesis Trust also conveyed another property, but the description does not appear to match that of Parcel Two.

Gand K Trust. (Ex. 28.) Parcel Four is deeded to Gerard and Kathnell O'Shea as Trustees of the Genesis Trust. (Ex. 29.)

The Government recorded Notices of Federal Tax Liens with the Clerk of the County Commission in Greenbrier County, West Virginia, against Gerard and Kathnell O'Shea and the All About Beauty Trust for tax years 2002, 2003, and 2004. (Ex. 14, 15, 16.) In addition, the Government recorded Notices of Federal Tax Liens against the Genesis Trust as nominee and/or alter ego of Kathnell O'Shea and of Gerard O'Shea to attach to residential and farm property, parcel number 18 51003800000000. (Ex. 17 and 18.) Notices of Federal Tax Liens were recorded against Gand K Trust as nominee and/or alter ego of Gerard and Kathnell O'Shea to attach to mixed residential and commercial real estate, parcel 10 19014600000000. (Ex. 19 and 20.)

Mr. Yurick explained that certain facts about the properties and the O'Sheas' use of the Trusts suggested to him that they may be sham trusts, warranting further investigation. Following further review, he concluded that the Genesis Trust and the Gand K Trust were, in fact, sham trusts and alter ego/nominees for the Defendants, Gerard and Kathnell O'Shea. Gerard O'Shea signed a check payable to James Dilullo and admitted to meeting with him.[8] Mr. Dilullo was convicted of corrupt interference with the Internal Revenue Laws for promoting and selling trusts and trust packages to assist tax evaders. Further, based on the amount of consideration for each property recorded in the deeds, the properties were transferred to the Trusts for inadequate consideration. The O'Sheas paid all expenses necessary to maintain the properties. All property taxes were paid

---

Based on the Court's conclusions below, however, the outcome will be the same whether the O'Sheas own the property directly or through the Genesis Trust.

8 The check was written on the All About Beauty account. The Court finds that the O'Sheas commingled personal and Trust/business funds, and therefore does not distinguish between moneys paid from the O'Sheas' personal accounts and moneys paid from the All About Beauty account.

directly by the O'Sheas. They maintained insurance on the property. They continued to enjoy the benefits of ownership of the properties, including occupying Parcel One as their residence and operating their business from Parcel Three.

### III.     CONCLUSIONS OF LAW

Under relevant law, the Court finds that the Government has met its burden of proof required to reduce the tax liabilities to judgments and to enforce the resulting federal tax liens. When Defendants Gerard O'Shea and Kathnell O'Shea failed to file tax returns, the IRS properly prepared substitutes for returns. 26 U.S.C. § 6020(b)(1). When the All About Beauty Trust filed tax returns reflecting a zero balance, the IRS properly investigated and prepared a substitute return with accurate information. *Id.* Upon finding deficiencies, the IRS complied with 26 U.S.C. § 6212 by sending statutory notices of deficiency to the last known address of the taxpayer defendants.

Pursuant to § 6213, the O'Sheas had the opportunity to "file a petition with the Tax Court for a redetermination of the deficiency" within ninety days after the mailing of the notices of deficiency. 26 U.S.C. § 6213(a). "If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency…shall be assessed, and shall be paid upon notice and demand from the Secretary." 26 U.S.C. § 6213(c). Although the O'Sheas now suggest that the assessments are inaccurate, the time for such contentions is long past. (Def.'s Proposed Findings of Fact and Conclusions of Law, 2–3.)[9] IRS Form 4340 certificates of assessment are prima facie evidence in support of the alleged tax liabilities. *See United States v.*

---

9 The Court notes also that the Government's Exhibits 30 and 31 do include an explanation of the assessments. The Defendants challenge the accuracy only after the conclusion of the trial, and without introducing or presenting any contrary evidence of their actual income during the relevant periods.

7

*Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002) (explaining that the assessment is presumptively correct); *United States v. Hopkins*, 859 F. Supp. 208, 211 (S. D. W. Va. 1994) (Copenhaver, J.) (citing *United States v. Pomponio,* 635 F.2d 293, 296 (4th Cir.1980)).

Because the Defendants failed to satisfy the deficiency after receiving notice and demand for payment, "the amount…shall be a lien in favor of the United States upon all property and rights to property…belonging to such person." 26 U.S.C. § 6321. In turn, § 7403 gives the United States authority to bring an action in federal district court to enforce the liens. 26 U.S.C. § 7403. All property belonging to the taxpayer Defendants is accordingly subject to seizure. That includes property held by a nominee owner or alter ego for the taxpayers. *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977).

Courts consider the totality of the circumstances in determining nominee/alter ego status. For nominee status, the factors to be considered include:

> (1) 'the treatment by the taxpayer of the asset as his own;'
> (2) 'control over the [alleged nominee] by the taxpayer or a close relationship between them;'
> (3) 'use of the [alleged nominee's] funds to pay personal expenses of the taxpayer;'
> (4) 'transfer of the property to the [alleged nominee] for a nominal sum;'
> (5) 'the fact that the [alleged nominee] supported the taxpayer;'
> (6) 'whether the taxpayer expended personal funds for the property;'
> (7) 'whether the taxpayer enjoys the benefit of the property;' and
> (8) 'whether the record titleholder interfered with the taxpayer's use of the property.'

*United States v. Holland*, 637 F. Supp. 2d 315, 320 (E.D.N.C. 2009) *amended on reconsideration on unrelated grounds*, No. 5:07-CV-445-BO, 2009 WL 3166852 (E.D.N.C. Aug. 13, 2009) *aff'd*, 396 F. App'x 937 (4th Cir. 2010) (quoting *United States v. Greer,* 383 F.Supp.2d 861, 868 (W.D.N.C.2005)). The West Virginia Supreme Court has established a similar totality of the

8

circumstances test, with a set of factors to be considered, for determining whether to pierce the corporate veil. *Laya v. Erin Homes, Inc.*, 177 352 S.E.2d 93, 98-99 (W. Va. 1986).

The only testimony offered by the Defendants, beyond a brief examination of Defendant Gerard O'Shea by the Government, consisted of statements by Defendant Kathnell O'Shea regarding the establishment of the trusts. She explained that they were unaware that the trusts were fraudulent and their intent had only been to protect what they owned. None of the Defendants contested the fact that they continued to control the properties or indicated that the trusts served any purpose beyond insulating the family's assets. As found above, the properties were transferred to the Trusts for nominal consideration. The O'Sheas continued to use the properties for their residence and their business, and continued to enjoy the benefits and burdens of ownership. In short, the Gand K and Genesis Trusts existed solely to hold legal title to properties that the O'Sheas continued to control. Accordingly, the Court finds that the Gand K and Genesis Trusts are the alter egos and nominees of Gerard and Kathnell O'Shea, and should be set aside for federal income tax purposes.

**WHEREFORE**, following careful consideration, and for the reasons stated herein, the Court **ORDERS** that judgment be entered against the taxpayer Defendants as follows:

- Gerard O'Shea, for tax years 2003 and 2004, in the total amount of **$312,633.71,** with statutory additions and interest accruing from February 2, 2015;

- Kathnell O'Shea, for tax years 2002, 2003, and 2004, in the total amount of **$421,539.63,** with statutory additions and interest accruing from February 2, 2015;

- The All About Beauty Trust, for tax years 2002, 2003, and 2004, in the total amount of **$246,544.72,** with statutory additions and interest accruing from February 2, 2015.

The Court further **ORDERS** that the Genesis Trust and the Gand K Trust be set aside and disregarded for federal income tax purposes, and that the United States be permitted to foreclose its federal tax liens against Gerard O'Shea, Kathnell O'Shea, the All About Beauty Trust, the Genesis Trust as nominee/alter ego of Gerard and Kathnell O'Shea, and the Gand K Trust as nominee/alter ego of Gerard and Kathnell O'Shea.   The Court **ORDERS** that the United States be permitted to foreclose its federal tax liens against Parcels One, Two, Three, and Four to sell the properties, all proceeds from the sale to be applied to (1) the costs of the sale, (2) the federal income tax liabilities of Gerard O'Shea, Kathnell O'Shea, and the All About Beauty Trust; and (3) to Gerard and Kathnell O'Shea.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

        ENTER:       February 20, 2015

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA